Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
212-353-8700 (tel.)
917-591-2875 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

| | |
|---|---|
| CINDY LANDINO, | |
| Plaintiff, | **Civil Action No. 21-11431** |
| v. | **COMPLAINT** |
| McLAREN HEALTH CARE CORPORATION; McLAREN MACOMB HOSPITAL; SELECT MEDICAL HOLDINGS CORPORATION; and SELECT SPECIALTY HOSPITAL - MACOMB, | |
| Defendants. | |

---

Plaintiff Cindy Landino by and through her undersigned counsel, Eisenberg & Baum, LLP, states her Complaint against Defendants McLaren Health Care Corporation, McLaren Macomb Hospital, Select Medical Holdings Corporation, and Select Specialty Hospital - Macomb (collectively, "Defendants") as follows based upon personal knowledge and information and belief:

## INTRODUCTION

1.      Plaintiff Cindy Landino is deaf, and primarily communicates in American Sign Language or "ASL" for short. Her recently deceased husband, Michael Landino, was also deaf and primarily communicated in ASL. The Landinos required an ASL interpreter to effectively

communicate and participate in a medical setting at all relevant times.

2. Effective communication between medical providers and patients provides better patient safety, better treatment adherence, and better health care outcomes. In other words, "it is primarily through language that the physician works to establish rapport and trust. Good physician-patient communication is fundamental to good health care." E. McEwen & H. Anton-Culver, Journal of Family Practice, Vol. 26, No. 3:289–291, 291 (1988).

3. Plaintiff's claims arise out of Michael Landino's stay at Select Specialty Hospital - Macomb from June to August 2020 and Cindy Landino's stay at McLaren Macomb Hospital for four days in October 2020, each suffering serious health issues. Both hospitals refused to provide the Landinos with the ASL interpretive services they required to understand and participate in their care.

4. Defendants' failure to provide the Landinos with ASL interpreters, despite knowing that they are deaf and repeatedly requested such services, prevented Plaintiff and her husband from enjoying the same healthcare services that a hearing person would.

5. Without equally effective communication, the Landinos could not make informed health care choices. Instead, they experienced heightened anxiety throughout their treatment at Defendants' facilities. Defendants' actions and inactions caused Plaintiff to be anxious and afraid of misunderstanding her and her husband's treatment options. This was especially the case given the life-threatening health issues that brought the Landinos to Defendants' facilities. Mr. Landino ultimately succumbed to his illnesses.

6. Plaintiff not only brings claims as her husband's companion during his months-long care, but also brings claims arising from her own treatment for health issues she sustained in coping with her husband's death.

7. Defendants discriminated against Plaintiff by refusing to provide the ASL services she required to understand and participate in her and her husband's health care.

8. Based on Plaintiff's experience, it is also evident that Defendants have failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease their unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendants' health care services.

9. Plaintiff brings this action seeking compensatory and punitive damages; declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Defendants' unlawful discrimination against her on the basis of disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

## THE PARTIES

10. Plaintiff Cindy Landino is a resident of Clinton Township, Michigan, who is substantially limited in the major life activities of hearing and speaking. Thus, she is a qualified individual with a "disability" within the meaning of federal civil rights laws.

11. Upon information and belief, defendant McLaren Health Care Corporation has at all relevant times been a domestic non-profit corporation with a registered address for service at One McLaren Pkwy, Grand Blanc, MI 48439. Upon information and belief, McLaren Health Care Corporation is the parent company of defendant McLaren Macomb Hospital, is a place of public accommodation, and is a recipient of federal financial assistance, including but not limited to Medicare and/or Medicaid reimbursements.

12. Upon information and belief, defendant McLaren Macomb Hospital has at all

relevant times been a domestic non-profit corporation maintaining its offices and principal place of business at 1000 Harrington Blvd., Mount Clemens, MI 48043.  Upon information and belief, McLaren Macomb Hospital is a place of public accommodation and a recipient of federal financial assistance, including but not limited to Medicare and/or Medicaid reimbursements.

13.     Upon information and belief, defendant Select Medical Holdings Corporation has at all relevant times been a foreign corporation with a registered address for service at c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.  Upon information and belief, Select Medical Holdings Corporation is the parent company of defendant Select Specialty Hospital - Macomb, is a place of public accommodation, and is a recipient of federal financial assistance, including but not limited to Medicare and/or Medicaid reimbursements.

14.     Upon information and belief, defendant Select Specialty Hospital - Macomb has at all relevant times been a foreign for-profit corporation organized within the State of Missouri and maintaining its offices and principal place of business at 215 North Ave #200, Mount Clemens, MI 48043.  Upon information and belief, Select Specialty Hospital - Macomb is a place of public accommodation and a recipient of federal financial assistance, including but not limited to Medicare and/or Medicaid reimbursements.

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

**Michael Landino**

17. On May 11, 2020, Plaintiff's husband, Michael Landino, was brought by ambulance to the emergency room at McLaren Macomb Hospital ("McLaren").

18. Michael suffered from pneumonia, chronic obstructive pulmonary disease, and Macrocytosis, caused by severe liver disease. He remained in McLaren's intensive care unit for approximately three weeks.

19. Plaintiff was only able to visit her husband two to four times during his treatment at McLaren, given the ongoing COVID-19 pandemic.

20. At each of Plaintiff's visits, McLaren utilized an administrative staff member (not a qualified or certified ASL interpreter) to interpret. Plaintiff is unaware whether McLaren provided Michael with any interpretive aids or services while she was not present.

21. On or about June 3, 2020, Michael underwent surgery and was transferred to Select Specialty Hospital - Macomb ("SSH"), another facility in Mount Clemens, where he remained until at least August 2020.

22. Michael required a ventilator for most of his stay because of weakness in his lungs. While Plaintiff was able to visit Michael every day at SSH, she was only permitted to remain for four hours each day. Plaintiff repeatedly requested an ASL interpreter times throughout Michael's stay, which SSH ignored.

23. In fact, SSH completely refused to provide interpretive services for the Landinos or otherwise accommodate them during Michael's months-long treatment.

24. In addition to refusing to provide interpretive services, SSH staff also refused to remove their masks so the Landinos could at least attempt to read their lips.

25. For example, Plaintiff at one point asked a nurse named Thomas if he would remove his mask so that Michael could try to read his lips, to which Thomas responded by laughing in Michael's face. In fact, Thomas was so consistently rude that Plaintiff complained about him to SSH staff, and Michael was ultimately removed from his care.

26. Other nurses, specifically including nurses named Hayley and Evelyn, also refused to remove their masks to speak with the Landinos. In late July, Plaintiff notified Evelyn that she might have to write notes with Plaintiff's priest, who is also deaf and would be coming in to anoint her gravely-ill husband. Evelyn laughed at Plaintiff's request.

27. Another nurse, Deanne, would remove her mask to attempt to speak with Michael, but would walk away out of frustration where there were any issues understanding each other.

28. On or around August 2, 2020, a nurse named Chanda notified Plaintiff that Chanda and Michael were unable to understand each other, and that she was unable to read his handwriting. Chanda agreed that there should have been an interpreter present for Michael's treatment.

29. On August 10, 2020, Michael was later transferred to a nursing facility. Michael died one week later, on August 17, 2020.

**Cindy Landino**

30. In coping with Michael's death, Plaintiff began taking medication for depression that resulted in severe liver problems, including excessive vomiting and gastrointestinal issues. As such, in the evening of October 16, 2020, Plaintiff visited McLaren's emergency room.

31. After arriving and being told she needed to spend the night at McLaren, Plaintiff was finally assigned a room around 2AM on October 17, 2020.

32. During her four-day stay, McLaren did not provide any working interpretive services and refused Plaintiff's requests for an in-person interpreter at least three times. As such,

6

Plaintiff was unable to understand McLaren staff, especially given that the staff's masks prevented Plaintiff from attempting to read their lips.

33. On October 17, 2020, McLaren staff refused Plaintiff's request for an in-person interpreter. Instead, staff would either write notes on paper or simply begin speaking with Plaintiff verbally despite wearing masks, and despite Plaintiff's records noting that she is deaf.

34. On October 18, 2020, McLaren staff again used note-writing for the majority of their communications with Plaintiff. At other times, some staff members would remove their masks so that Plaintiff could attempt to read their lips.

35. McLaren staff at one point unsuccessfully attempted to set up MARTTI, a Video Remote Interpreting ("VRI") service, and even asked Plaintiff if she knew how to set it up. Plaintiff replied that she did not know how to set up the VRI and repeated her request for an in-person interpreter, which McLaren staff again refused.

36. Plaintiff eventually resorted to a live transcription service on her cell phone to communicate, including to discuss the status of her liver with her doctor.

37. Plaintiff's communication issues at McLaren continued through October 19, 2020, as staff continued to refuse to provide an in-person interpreter for Plaintiff. Plaintiff underwent a liver biopsy on October 19, which she found extremely stressful and upsetting because the staff involved in the procedure would only use note-writing to communicate with her.

38. At some point during her treatment, Plaintiff threw these handwritten notes on the ground out of frustration with her inability to understand her medical providers, but McLaren still refused to provide Plaintiff with the communication aids she required.

39. On October 20, 2020, Plaintiff was released from McLaren, having stayed there for five days without having ever been provided interpretive services.

40. On November 18, 2020, Plaintiff emailed Ryan Liddy, a Clinical Manager at McLaren, explaining McLaren's failure to provide her with interpretive services and the resulting communication issues during her stay.

41. Mr. Liddy responded on November 24, 2020, assuring Plaintiff that he was sorry and that "[w]e will be working to make this better for everyone."

42. Additionally, on November 25, 2020, Plaintiff was contacted by Amy Berdys, the Manager of Patient Experience at McLaren, who noted by email that she spoke with Mr. Liddy, and assured Plaintiff that McLaren staff would be trained and re-educated on the use of the MARTII VRI service and on the hospital's policies for language interpretation for deaf and hard of hearing patients.

**Facts relevant to all Defendants and visits**

43. Upon information and belief, Defendants and their employees follow the recommendations and regulations of the Joint Commission.

44. Upon information and belief, Defendants and their employees follow the recommendations for effective communication in the Joint Commission's Advancing Effective Communication, Cultural Competence, and Patient- and Family-Centered Care: A Roadmap for Hospitals, https://bit.ly/3usVEEh ("A Roadmap for Hospitals").

45. Consistent with the Joint Commission's guidance, Defendants have a responsibility to "develop a system to provide language services to address the communication needs of patients whose preferred language is not English, including patients who communicate through sign language." A Roadmap for Hospitals at page 40, https://bit.ly/3usVEEh.

46. Defendants have a responsibility to identify a "patient's preferred language for discussing health care." A Roadmap for Hospitals at page 10, https://bit.ly/3usVEEh.

47. If necessary to determine a patient's preferred language, Defendants should "[a]rrange for language services to help identify the patient's preferred language," and once the preferred language is identified, Defendants should "[n]ote the patient's preferred language for health care discussions in the medical record and communicate this information to staff." A Roadmap for Hospitals at page 10, https://bit.ly/3usVEEh.

48. The Joint Commission requires hospitals like Defendants to "[p]rovide an interpreter for the patient's preferred language during informed consent discussions, even if the hospital provides translated materials, to facilitate patient communication." A Roadmap for Hospitals at page 20, https://bit.ly/3usVEEh.

49. As advised by the Joint Commission, Defendants are aware that "[e]xchanging written notes . . . will likely be effective communication for brief and relatively simple face-to-face conversations." A Roadmap for Hospitals at page 69, https://bit.ly/3usVEEh.

50. Similarly, Defendants are aware that "[w]ritten forms or information sheets may provide effective communication in situations with little call for interactive communication, such as providing billing and insurance information or filling out admission forms and medical history inquiries." A Roadmap for Hospitals at page 69, https://bit.ly/3usVEEh.

51. Defendants knew or should have known of their obligations as health care providers under state and federal antidiscrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters to ensure effective communication with deaf individuals.

52. Defendants and their staff knew or should have known that their actions and inactions created an unreasonable risk of causing Plaintiff greater levels of emotional distress than a hearing person would be expected to experience.

53. Indeed, Defendant's discrimination against Plaintiff, and Plaintiff's resulting lack of understanding as to her and her husband's medical care, caused Plaintiff to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress. Plaintiff was especially afraid of misunderstanding her and her husband's treatment options, given the life-threatening health issues that brought the Landinos to Defendants' facilities, and which Michael eventually succumbed to.

54. Nevertheless, Defendants prevented Plaintiff from benefitting from their services by failing to provide the ASL interpreters necessary for her to effectively communicate and participate in a health care setting.

55. In doing so, Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to her federally protected rights.

56. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of disability is reflected by Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

57. As a result of Defendants' failure to ensure effective communication with Plaintiff, she and her husband received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

58. Plaintiff is entitled to equal access to services offered by Defendants as are enjoyed by non-disabled persons.

59. Plaintiff still wishes to access Defendants' facilities, but is deterred from doing so by Defendants' discrimination against her and her husband on the basis of their disability.

**CAUSES OF ACTION**

**COUNT I: Violations of Section 1557 of the Patient Protection and Affordable Care Act**

60. Plaintiff incorporates by reference all preceding paragraphs and realleges them in

10

support of this claim.

61. At all times relevant to this action, the ACA has been in full force and effect and has applied to Defendants' conduct.

62. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of the ACA, 42 U.S.C. § 18116.

63. At all times relevant to this action, Plaintiff's primary language for communication has been ASL, and she "has a limited ability to read, write, speak, or understand English." 45 C.F.R. § 92.4. Plaintiff is thus an individual with limited English proficiency under the ACA.

64. At all times relevant to this action, Defendants received federal financial assistance, including Medicare and Medicaid reimbursements, and have been principally engaged in the business of providing health care. Thus, Defendants are a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

65. Under the ACA, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

66. Federal regulations implementing the ACA provide that (1) a "covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency" and (2) a "covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d)(1)–(2).

67. Federal regulations implementing the ACA provide that a covered entity that

11

provides a qualified interpreter "through video remote interpreting services in the covered entity's health programs and activities shall provide" (1) "[r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication," (2) a "sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position," (3) a "clear, audible transmission of voices," and (4) "[a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f)(1)–(4).

68. Federal regulations implementing the ACA provide that a "[covered] entity shall furnish appropriate auxiliary aids and services when necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. § 35.160(b), *cited by* 45 C.F.R. § 92.202(a).

69. As set forth above, Defendant discriminated against Plaintiff on the basis of her disability in violation of the ACA and its implementing regulations.

70. The ACA, by incorporating the enforcement mechanism of the RA, extends a cause of action to Plaintiff–that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act. 42 U.S.C. § 18116(a).

71. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the ACA.

72. Plaintiff is entitled to declaratory and injunctive relief, nominal damages, compensatory damages, and attorneys' fees, costs, and disbursements, for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cindy Landino respectfully requests that this Court:

A. Enter a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of the ACA;

B. Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals or their companions meaningful access to, and full and equal enjoyment of, Defendants' facilities, services, or programs;

C. Issue an injunction ordering Defendants to:

　　i. develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, when other means are not effective one will be provided as soon as practicable in all services offered by Defendants;

　　ii. develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf and hard of hearing of their right to effective communication; including posting explicit and clearly marked and

  worded notices that Defendants will provide sign language interpreters upon request to ensure effective communication with deaf or hard of hearing persons;

 iii. develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the Video Remote Interpreting system is not appropriate in all medical situations;

 iv. create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

 v. train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ACA;

D. Award to Plaintiff:

 i. Compensatory damages;

 ii. Reasonable costs and attorneys' fees;

 iii. Nominal Damages;

 iv. Interest on all amounts at the highest rates and earliest dates allowed by law; and

 v. Any and all other relief that this Court deems just and appropriate.

Dated: June 18, 2021

            Respectfully submitted,

            EISENBERG & BAUM, LLP

            By:_____
            Andrew Rozynski, Esq.
            24 Union Square East, PH
            New York, NY 10003
            Tel: (212) 353-8700
            Fax: (917) 591-2875
            ARozynski@eandblaw.com
            *Attorneys for Plaintiff*