UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY LANDINO,

    Plaintiff,

       v.

MCLAREN HEALTH CARE CORP., ET AL.,

    Defendants.

_____/

Case No. 21-cv-11431

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING SELECT DEFENDANTS' MOTION TO DISMISS [#9] AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS [#21]

### I. INTRODUCTION

On September 9, 2021, hearing impaired Plaintiff Cindy Landino filed her Amended Complaint against Defendants McLaren Health Care Corporation, McLaren Macomb Hospital, Select Medical Holdings Corporation, and Select Specialty Hospital Macomb County, Incorporated ("Defendants"). ECF No. 5, PageID.28. Plaintiff alleges that Defendants committed disability discrimination by not affording her effective means to communicate as required under Section 1557 of the Affordable Care Act ("ACA"). *Id*. at PageID.41. She now seeks equitable and monetary relief. *Id*. at PageID.42.

Presently before the Court are Defendants Select Medical Holdings Corporation and Select Specialty Hospital Macomb County, Incorporated's

1

(collectively "Select Defendants"), Motion to Dismiss pursuant to Rule 12(b)(6) [#9], filed on September 17, 2021.  Plaintiffs submitted a Response in Opposition on October 1, 2021.  ECF No. 14, PageID.175.  Two weeks later, Select Defendants filed a Reply in support of their Motion.  ECF No. 16, PageID.215.

Plaintiff also submitted a motion for sanctions on November 4, 2021.  *See* ECF No. 21.  Select Defendants filed a Response two weeks later.  *See* ECF No. 25.  Plaintiff submitted a Reply to Select Defendants' Response on November 24, 2021.  *See* ECF No. 26.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the matters' disposition.  Therefore, the Court elects to resolve the motions on the briefs.  E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court will DENY Select Defendants' Motion to Dismiss and DENY Plaintiff's motion for sanctions.

## II. FACTUAL BACKGROUND

Plaintiff Cindy Landino is deaf and primarily communicates in American Sign Language ("ASL").  ECF No. 5, PageID.28.  On May 11, 2020, medical personnel ambulanced her husband, Michael Landino, to the emergency room at McLaren Macomb Hospital.  *Id.* at PageID.32.  He remained in McLaren's

intensive care unit for three weeks to treat his pneumonia, chronic obstructive pulmonary disease, and macrocytosis.  *Id.*  Mr. Landino was also deaf.  *Id.*

On June 3, 2020, Plaintiff's husband underwent surgery before his transfer to Select Specialty Hospital in Macomb County ("SSH"), where he stayed until August 2020.  ECF No. 9-3, PageID.121.  When Plaintiff visited her husband, she allegedly requested ASL interpreters on numerous occasions.   ECF No. 5, PageID.32.   Plaintiff states that SSH staff ignored her.  *Id.*

Select Defendants contend that their staff accommodated Plaintiff and her husband with a communication board, pens, and paper to communicate.  ECF No. 9-3, PageID.121.  SSH staff purportedly suggested Plaintiff and her husband use an iPad to communicate as well.  *Id.* at PageID.122.  Select Defendants assert that neither Plaintiff nor her husband refused or disagreed with using the iPad.  *Id.*  Nor did Plaintiff or her husband ever request additional accommodations, according to Select Defendants.  *Id.*

Plaintiff posits that SSH nurses laughed when she asked them to remove their masks so she could read their lips.  ECF No. 5, PageID.33.  Without an ASL interpreter, Plaintiff told one nurse she may need to write notes for her hearing-impaired priest.  *Id.*  The nurse laughed at her request, Plaintiff says.  *Id.*  On a separate occasion, Plaintiff claims a nurse walked away in frustration over her

3

inability to communicate with Mr. Landino and Plaintiff.  *Id*.  On August 2, 2020, another nurse told Plaintiff she could not communicate with Mr. Landino, the Amended Complaint states, nor read his handwriting.  *Id*.  Plaintiff asserts that the nurse agreed an ASL interpreter was needed.  *Id*.  Eight days later, Mr. Landino was moved to a nursing facility.  *Id*.  He passed away the following week.  *Id*.

Plaintiff began taking antidepressant medication after her husband passed.  *Id*.  The medication caused severe liver problems, Plaintiff claims, which landed her in McLaren's emergency room on October 17, 2020.  *Id*.  Plaintiff states she never received an ASL interpreter over her four day stay at McLaren.  *Id.* at PageID.34.   Like Select Defendants, McLaren staff allegedly communicated through written notes or orally speaking to Plaintiff with masks on, despite Plaintiff being deaf.  *Id.*   McLaren staff also tried using a Video Remote Interpreting ("VRI") service to communicate with Plaintiff.  *Id.*   Plaintiff eventually resorted to a live transcription service on her phone to communicate with staff.   ECF No. 5, PageID.34.   The communication issues at McLaren continued until October 19, 2020, when Plaintiff had a liver biopsy.  *Id*.  Plaintiff found the procedure stressful because she could only communicate with staff by writing notes.  *Id.*

On October 20, 2020, Plaintiff was released from McLaren.  She emailed Ryan Liddy, a McLaren clinical manager on November 18, 2020, to discuss the

hospital's failure to provide her interpretive services.  ECF No. 5, PageID.35.  A week later, McLaren's manager of patient experience, Amy Berdys, contacted Plaintiff to assure her that McLaren staff would be trained and re-educated on using VRI services and the hospital's policies for language interpretation for deaf and hard of hearing people.  *Id.*  Several months later, on June 18, 2021, Plaintiff commenced the present action.  *See* ECF No. 1.

### III. LAW AND ANALYSIS

After Plaintiff filed her Amended Complaint, Select Defendants moved to dismiss the present action.  Plaintiff filed a motion for sanctions in return.  The Court addresses each party's motion in the order they were filed.

#### A. Select Defendants' Motion to Dismiss

##### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss complaints that "fail[] to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, complaints must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A "claim is facially plausible when a plaintiff 'pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951–52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The complaint must contain "more than labels and conclusions" to survive dismissal. *Twombly*, 550 U.S. at 545. Courts must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Loc. 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014).

## 2.  Affordable Care Act and Rehabilitation Act

Select Defendants move to dismiss the single Count from Plaintiff's Amended Complaint: that Select Defendants violated the ACA by not providing Plaintiff an ASL interpreter. Analyzing a discrimination claim under the ACA requires an understanding of its relationship to civil rights statutes. The ACA incorporates by reference four civil rights statutes' prohibitions on discrimination into the health care system. *See* 42 U.S.C. § 18116(a). Specifically, the ACA invokes Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Age

Discrimination Act of 1972, 42 U.S.C. § 6101, and relevant here, the Rehabilitation Act, 29 U.S.C. § 794. *Id.*

The ACA adopts "[t]he enforcement mechanisms provided for and available under" those civil rights statutes. *Id.* The requirements for a discrimination claim under each statute therefore apply to discrimination claims under the ACA. *See Doe v. BlueCross Blue Shield of Tenn., Inc.*, 926 F.3d 235, 238 (6th Cir. 2019) ("The Affordable Care Act prohibits discrimination based on several grounds. But it does not change the nature of those grounds any more than it adds a new form of discrimination[.]"). When proponents bring discrimination challenges under the ACA for conduct the Rehabilitation Act prohibits, courts use the Rehabilitation Act's enforcement mechanism. *See, e.g.*, *Tomei v. Parkwest Med. Ctr.*, No. 21-5448, 2022 U.S. App. LEXIS 1289, at *5 (6th Cir. Jan. 18, 2022) ("The ACA … adopts the Rehabilitation Act's prohibited ground for discrimination … and its enforcement mechanisms."); *see also Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 577 (N.D. Ohio 2020).

Section 504 of the Rehabilitation Act provides "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. Making a *prima facie* case for disability

discrimination under the Rehabilitation Act, and by extension the ACA, requires plaintiffs to show: (1) they are disabled; (2) they are otherwise qualified to participate in the health program; (3) they are being excluded from participation in, denied the benefits of, or otherwise discriminated against by a covered entity; and (4) the program receives federal support.  *See Doe*, 926 F.3d at 241.  Such discrimination, denial, or exclusion occurs when hospitals fail to "furnish appropriate auxiliary aids and services" to deaf patients or patients' deaf companions "where *necessary* to ensure *effective communication*."  *See* 28 C.F.R. § 36.303(c)(1) (emphasis added); *see also Tomei*, 2022 U.S. App. LEXIS 1289, at *9.

### 3.  Application to Select Defendants' Motion to Dismiss

Select Defendants move to dismiss the Amended Complaint on three grounds: (1) Plaintiff's failure to exhaust administrative remedies; (2) Plaintiff's lack of Article III standing; and (3) Plaintiff's failure to plead intent to discriminate.  The Court applies the law above to Select Defendants' arguments below.

*First* — Plaintiff need not exhaust administrative remedies prior to filing suit against Select Defendants.  The Rehabilitation Act contains "no exhaustion requirement" of administrative remedies prior to plaintiffs commencing a private action against federal grantees.  *See Tuck v. HCA Health Services of Tenn., Inc.*, 7

F.3d 465, 470–71 (6th Cir. 1993).   With the Rehabilitation Act's enforcement mechanisms incorporated into the ACA, Plaintiff had no administrative remedies to exhaust prior to filing suit.  *See Doe*, 926 F.3d at 239–40.  Had Plaintiff alleged discrimination prohibited under another civil rights statute the ACA references, an exhaustion requirement may have been needed.  But as the Sixth Circuit explained in *Doe*:

> [T]he [ACA] prohibits discrimination against the disabled in the provision of federally supported health programs under § 504 of the Rehabilitation Act.  In doing so, the Affordable Care Act picks up the standard of care for showing a violation of *§ 504*, not the other laws incorporated by the statute or for that matter any other statute.

926 F.3d at 239 (emphasis in original).   The Court therefore declines to dismiss Plaintiff's Amended Complaint for failing to exhaust administrative remedies.

*Second* — Select Defendants assert that Plaintiff lacks Article III standing. Standing is the "essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs must meet three requirements to establish standing: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) a causal relationship between the injury and alleged conduct; and (3) a likelihood that the Court can redress the injury.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  At the motion to dismiss stage, "a facial attack on the pleadings for lack of standing" requires courts to "accept the allegations set forth in the complaint as

9

true, drawing all inferences in favor of the plaintiff." *See Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019).

Here, Plaintiff has Article III standing.  Her alleged discrimination is the injury, which Plaintiff's Amended Complaint traces to Select Defendants.  For example, Plaintiff alleges Select Defendants denied her an ASL interpreter after she requested one.  SSH staff laughed at Plaintiff afterwards, she claims, when Plaintiff followed up on her requests to read lips.  Select Defendants' denial of interpretive services is the traceable discrimination.  The Court can redress the injury with monetary and injunctive relief.

Select Defendants focus their argument on Plaintiff "failing to obtain letters of authority to sue in her deceased husband's name[.]"  ECF No. 9, PageID.83.  The Court is unaware of any such requirement.  The ACA's regulations expressly commands Select Defendants to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including … *companions* … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity."  28 C.F.R. § 35.160(b) (emphasis added).  Plaintiff's Amended Complaint discusses how Select Defendants denied her an ASL interpreter after repeated requests.  Although Mr. Landino was the patient, both Plaintiff and her husband were injured based on the Amended

Complaint's allegations.   As such, Plaintiff has Article III standing and her husband's experience at Select Defendants' hospital is relevant to Plaintiff's claim.

*Third* — Select Defendants argue that Plaintiff fails to plead intent to discriminate based solely on her disability.   ECF No. 16, PageID.211.   While the Rehabilitation Act prohibits discrimination "*solely* by reason of [someone's] disability," 29 U.S.C. § 794(a) (emphasis added), the ACA prohibits discrimination "on the grounds prohibited under … [the Rehabilitation Act]," 42 U.S.C. § 18116(a), *i.e.*, on the ground of disability.   Moreover, as the Court discussed *supra*, Plaintiff's Amended Complaint presents facts establishing a *prima facie* case of disability discrimination.   Namely, that Select Defendants failed to provide Plaintiff means for effective communication.   "[T]he Rehabilitation Act does not require a plaintiff to prove discriminatory intent in order to make out a *prima facie* case of handicap discrimination."   *Mayberry v. Von Valtier*, 843 F. Supp. 1160, 1166 (E.D. Mich. 1994).   Plaintiff therefore need not plead intent to establish a *prima facie* case here.

But establishing a *prima facie* case of disability discrimination merely permits injunctive relief.   *See Francois v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370, 378 (5th Cir. 2021); *see also Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824, 831 (11th Cir. 2017) ("[P]roving the failure to provide a means of effective communication, on its own, permits only injunctive relief.").   To recover

11

monetary damages, a disabled individual must further show that hospital staff were deliberately indifferent to federally protected rights. *See Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 (6th Cir. 2008) ("[A] showing of intent to discriminate is required under Section 504 when a plaintiff seeks damages[.]"). Showing deliberate indifference requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *See Tanney v. Boles*, 400 F. Supp. 2d 1027, 1047 (E.D. Mich. 2005) (citation omitted). The defendant must have notice of the required accommodation and must have failed to act because of their indifference to the federally protected right. *Id.* The legal standard to recover monetary damages is undisputed between the parties.

The Court finds that Plaintiff plausibly plead Select Defendants acted deliberately indifferent towards her. While at Select Defendants' hospital, nurses laughed at Plaintiff, she says, after numerous requests for an ASL interpreter. Plaintiff claims her requests were made because both she and her husband experienced trouble communicating with Select Defendants' staff. Even after Plaintiff made the request, one nurse allegedly walked off in frustration over the miscommunication issues. For over two months while Mr. Landino stayed at Select Defendants' hospital, the Amended Complaint asserts Plaintiff never received an ASL interpreter. Thus, Select Defendants had notice about Plaintiff

needing the ASL interpreter, and failed to act for over two months.  Plaintiff pleads sufficient facts illustrating Select Defendants plausible deliberate indifference to her right to participate in effective communication.  The Amended Complaint therefore survives a Rule 12(b)(6) motion to dismiss.

Select Defendants aver that by providing Mr. Landino an iPad, white boards, and note-taking materials, they afforded him and Plaintiff sufficient accommodations to communicate effectively.  ECF No. 9, PageID.92.  Plaintiff's Amended Complaint also mentions that Select Defendants provided her note taking materials to facilitate communication.  But unlike claims under the Rehabilitation Act, Select Defendants must "defer to the individual's request" under the ACA's regulations.  *See Tomei*, 2022 U.S. App. LEXIS 1289, at *10 (citing 45 C.F.R. § 92.102); *see also Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 65–66 (2d Cir. 2021) ("[T]he ACA extends 'primary consideration' to individuals seeking services at Title III public accommodations.") (citing 28 C.F.R. § 35.160(b)(2)).  Additionally, the sufficiency of an auxiliary aid is typically a question of fact reserved for a jury.  *See Tokmenko*, 488 F. Supp. 3d at 578 (quoting *Miller v. Christ Hospital*, No. 1:16-cv-937, 2019 U.S. Dist. LEXIS 199034, at *12 (N.D. Ohio Nov. 18, 2019)).  For instance, a deaf patient may need an ASL interpreter to communicate with hospital personnel about complex medical diagnoses or treatment options.  *See Miller*, 2019 U.S. Dist. LEXIS 199034, at *12

13

(internal citations omitted).  That same individual may only need written notes to communicate with a store clerk in the hospital's gift shop.  *Id.*  An auxiliary aid's sufficiency is context specific, which is why the ACA affords deference to those making the accommodation request.  *See* 45 C.F.R. § 92.102 (citing 28 C.F.R. § 35.160(b)(2)).[1]

Whether Select Defendants offered Plaintiff a reasonable accommodation is unclear.  At this stage in litigation, however, Select Defendants fail to demonstrate that dismissing Plaintiff's Amended Complaint is warranted.  Accordingly, the Court will DENY Select Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6).[2]

## B. Motion for Sanctions

Next, Plaintiff requests sanctions against Select Defendants for filing their Motion to Dismiss.  ECF No. 21, PageID.249.  Plaintiff seeks sanctions pursuant to

---

[1] The Court notes that 45 C.F.R. § 92.102 was previously designated as 45 C.F.R. § 92.202 until August 18, 2020.  The regulation has incorporated 28 C.F.R. § 35.160(b)(2) since July 18, 2016, when the ACA's first regulations were promulgated.

[2] Select Defendants argue in the alternative that Plaintiff amend her Amended Complaint to provide "sufficient information" concerning the alleged discrimination.  ECF No. 16, PageID.214.  The Court declines to grant that request because the Amended Complaint establishes a *prima facie* disability discrimination case.

Section 1927, Rule 11, and under the Court's inherent authority.  The Court will deny Plaintiff's motion.

### 1.  Standards of Review

#### a.  Section 1927

Plaintiff first moves for sanctions under 28 U.S.C. § 1927.  "Section 1927 provides that any attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'"  *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (quoting 28 U.S.C. § 1927).  Sanctions under this provision should "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy."  *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

#### b.  Rule 11

Sanctions imposed under FED. R. CIV. P. 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  The Sixth Circuit's test for imposing Rule 11 sanctions is "whether the individual's conduct was objectively reasonable under the circumstances."  *King v. Whitmer*, No. 20-13134, 2021 U.S. Dist. LEXIS 160532,

at *24 (E.D. Mich. Aug. 25, 2021) (quoting *Nieves v. City of Cleveland*, 153 F. App'x 349, 352 (6th Cir. 2005)). Courts ask "whether the position advanced by a party was supported by a reasonable inquiry into the applicable law and relevant facts[,]" when determining objective reasonableness. *See Advo Sys. Inc. v. Walters*, 110 F.R.D. 426, 430 (E.D. Mich. 1986) (citations omitted). "Whether a 'reasonable inquiry' was conducted 'is judged by objective norms of what reasonable attorneys would have done.'" *King*, 2021 U.S. Dist. LEXIS 160532, at *25 (quoting *In re Big Rapids Mall Assoc.*, 98 F.3d 926, 930 (6th Cir. 1996). Rule 11's advisory committee notes instructs that this objective standard should "eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." FED. R. CIV. P. 11 Advisory Committee Notes (1993 Amendment).

### c. Court's Inherent Authority

Plaintiff also moves for sanctions under the Court's inherent authority. "In addition to Rule 11 and 28 U.S.C. § 1927, a district court may award sanctions pursuant to its inherent powers when bad faith occurs." *See Runfola & Assocs. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996). Imposing sanctions under the court's inherent authority requires three findings: (1) "the claims advanced were meritless," (2) "counsel knew or should have known this," and (3) "the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)

("The district court has the inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." (internal quotation marks omitted)).

### 2. Application to Plaintiff's Motion for Sanctions

Under each argument Plaintiff presents, sanctions are unwarranted here. By performing brief legal research, Plaintiff posits, Select Defendants would have recognized that their arguments are unavailing. Additionally, Plaintiff argues that spending time responding to Select Defendants' motion supports imposing sanctions. But Plaintiff fails to demonstrate why Select Defendants' arguments were frivolous or made in bad faith. First, it is unclear how Select Defendants' Motion to Dismiss amounted to unreasonable multiplication of proceedings, as required for sanctions under Section 1927. Select Defendants' Motion did not "far exceed zealous advocacy" so to warrant sanctions here. *See Sater*, 465 F.3d at 646.

Second, Select Defendants did not violate Rule 11 because their behavior was not objectively unreasonable. Simply because Select Defendants' arguments were unsuccessful, does not mean they have no basis in law. *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 778 (6th Cir. 1996) ("The relevant inquiry is whether a specific filing was, if not successful, at least well founded."). For example, Select Defendants are correct that some discrimination claims under the ACA have

17

exhaustion requirements.  But not all do.  *E.g.*, *Doe*, 926 F.3d at 239–40 ("§ 504 do[es] not require the exhaustion of administrative remedies … while the Age Discrimination Act does.").  As such, sanctions under Rule 11 are unwarranted here.

Finally, the Court declines to impose sanctions based on its inherent authority.  Select Defendants conduct did not "abuse[] the judicial process."  *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).  Plaintiff does not demonstrate that Select Defendants' motive for filing their Motion was improper.  *See Big Yank Corp.*, 125 F.3d at 313.  Rather, Select Defendants advocated on behalf of their clients in good faith.  As previously discussed, Select Defendants present arguments with some merit.  Accordingly, the Court will DENY Plaintiff's motion for sanctions.

## IV. CONCLUSION

For the reasons discussed above, the Court will DENY Select Defendants' Motion to Dismiss [#9].

The Court will also DENY Plaintiff's Motion for Sanctions [#21].

IT IS FURTHER ORDERED that Select Defendants' file an Answer to Plaintiff's Amended Complaint no later than 5:00 p.m. on February 28, 2022.

**IT IS SO ORDERED.**

Dated:  February 14, 2022          /s/ Gershwin A. Drain
                                   GERSHWIN A. DRAIN
                                   UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 14, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager